```
                   UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF LOUISIANA

DS WATERS OF AMERICA, INC.                    CIVIL ACTION

VERSUS                                        NO: 07-9156

PRINCESS ABITA WATER,                         SECTION: J(2)
L.L.C., ET AL
```

## ORDER AND REASONS

Before the Court is Plaintiff DS Waters of America, Inc.'s **Motion for Preliminary Injunction (Rec. Doc. 5)**. Plaintiff seeks a preliminary injunction prohibiting Defendants, Jack DeWald ("DeWald") and Princess Abita Water, L.L.C. ("Princess Abita") from infringing upon Plaintiff's ABITA SPRINGS trademarks, pending final judgment in this matter.

A preliminary injunction hearing was held on January 11, 2008, at which point the matter was taken under advisement by this Court. Upon review of the record, the memoranda of counsel, and the applicable law, this Court now finds, for the reasons set forth below, that Plaintiff's motion should be granted.

## Background Facts

Plaintiff, a bottler, distributer, and seller of bottled

water products and water coolers, owns federal and state[1] trademark applications for the ABITA SPRINGS trademark, both the words "Abita Springs" alone and the words "Abita Springs" in a design format (collectively referred to as "ABITA SPRINGS Marks").  Plaintiff also owns federal trademark registrations for ABITA SPRINGS for use in commerce in connection with water coolers and bottled water delivery services.

DeWald filed an intent-to-use federal trademark application for the PRINCESS ABITA NATURAL SPRING WATER SOURCE: ABITA SPRINGS trademark in the design format in connection with bottled water.  This application is still pending before the USPTO as it was abandoned following multiple requests for extensions of time within which to allege use of the PRINCES ABITA Mark in commerce.[2]

When Plaintiff became aware of Defendants' intent to use the PRINCESS ABITA Marks, Plaintiff sent DeWald a cease and desist letter notifying DeWald of Plaintiff's trademark rights and

---

[1] Specifically, Plaintiff owns state registrations for ABITA SPRINGS LOGO: LETTER STACKED "I" REPRESENTED BY IDEALIZED WATER STREAM to identify bottled water, and for ABITA SPRINGS for use in connection with the manufacture, sale, and delivery of bottled water.

[2] In January 2007, DeWald filed a petition to revive the application indicating there was ongoing effort to begin use of the PRINCESS ABITA NATURAL SPRING WATER SOURCE: ABITA SPRINGS trademark in commerce.  DeWald submitted a statement and specimen of use to the USPTO claiming use as early as June 1, 2002 and a date of first use in commerce of October 10, 2006.  However, on August 28, 2007, the USPTO refused to accept DeWald's statement of use and specimen of use.

requested that Defendants cease and desist their use of "Princess Abita" or any other confusingly similar variation thereof. Defendants apparently ignored this request and have continued to use the Marks.

As a result, Plaintiff filed its verified complaint against Defendants on November 26, 2007, alleging trademark infringement pursuant to the Lanham Act, 15 U.S.C. 1114, and unfair competition pursuant to 15 U.S.C. 1125, as well as trademark infringement, dilution, and unfair trade practices pursuant to Louisiana law arising from Defendants' use of the PRINCESS ABITA Mark.  Contemporaneously therewith, Plaintiff filed a Motion for Temporary Restraining Order, which this Court denied.

## The Parties' Arguments

According to Plaintiff, through years of use in commerce, the ABITA SPRINGS Marks have acquired significant goodwill and secondary meaning, such that consumers associate the words ABITA SPRINGS or ABITA on bottled water with Plaintiff's brand of bottled water.[3]  Through its exclusive use of ABITA SPRINGS since at least 1994 along with its federal and state registrations, Plaintiff has acquired the exclusive right to use ABITA SPRINGS

---

[3] The federal ABITA SPRINGS marks have all been used in commerce since July 27, 1994.  The federal mark as it is used in commerce in connection with bottled water delivery services has been in use since January 15, 1986.  Additionally, the state registration for the ABITA SPRINGS LOGO has been used in Louisiana since June 1, 1986, while the ABITA SPRINGS state registration  for use in connection with the manufacture, sale, and delivery of bottled water has been used in Louisiana since January 15, 1986.

to identify bottled water, water coolers, and bottled water delivery services.  Furthermore, Plaintiff's right to use ABITA SPRINGS exclusively in connection with bottled water was made incontestable after it used this mark continuously in commerce for five years and submitted an affidavit of incontestability to the U.S. Patent and Trademark Office ("USPTO") pursuant to 15 U.S.C. 1065.

Plaintiff argues that Defendants' PRINCESS ABITA Mark[4] is a confusingly similar trademark.  Defendants' bottled water products featuring this trademark are currently being sold in the same stores in which Plaintiff's products are being sold.[5]  This use leads Plaintiff to the conclusion that Defendants intend to use a mark confusingly similar to Plaintiff's Marks in order to trade upon the goodwill created by Plaintiff and to draw customers.  Such conduct causes Plaintiff continued irreparable harm, and is grounds for the issuance of a preliminary injunction as equitable relief is the remedy of choice for trademark and trade dress infringement since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement. Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1180 (9th Cir. 1988).

---

[4] Plaintiff is unsure whether Defendants are using the PRINCESS ABITA NATURAL SPRING WATER SOURCE: ABITA SPRINGS Mark or only the PRINCESS ABITA NATURAL SPRING WATER Mark.  In their opposition, Defendants deny use of the PRINCESS ABITA NATURAL SPRING WATER SOURCE: ABITA SPRINGS in commerce.

[5] In at least one store, Defendants' products are being sold on the same shelf, directly adjacent to Plaintiff's products.

In opposition, Defendants state that Plaintiff has failed to establish that there is a substantial likelihood it will prevail on the merits. Defendants argue that Plaintiff's Mark is invalid and unenforceable as being deceptive. Defendants also argue that Plaintiff has failed to establish that there is a likelihood of confusion between Plaintiff's Marks and that of Defendants.

### Discussion

The Fifth Circuit utilizes a four prong test when considering an application for a preliminary injunction. In order to obtain preliminary injunctive relief under Rule 65 of the Federal Rules of Civil Procedure, the plaintiff must establish: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury to the plaintiff must outweigh the threatened injury to the defendant; and (4) granting the preliminary injunction must not disserve the public interest. <u>Valley v. Rapides Parish School Bd.</u>, 118 F.3d 1047, 1051 (5th Cir. 1997). This standard is applicable to trademark infringement cases. <u>Acme Refrigeration Supplies, Inc. v. Acme Refrigeration of Baton Rouge, Inc.</u>, 961 F. Supp. 936 (E.D. La. 1996).

**A. Likelihood of Success on the Merits**

Several factors must be examined to determine whether Plaintiff has proven a likelihood of success on the merits. A party alleging trademark infringement must establish: (1) that it owns a protectable mark; (2) that it is the senior user of the

mark; and (3) the defendant's use of a confusingly similar mark that will result in a likelihood of confusion.  <u>Union Nat. Bank of Texas, Laredo, Tex. v. Union Nat. Bank of Texas, Austin, Tex.</u>, 909 F.2d 839, 844 (5th Cir. 1990).

**1.  Whether Plaintiff's Mark is Protectable**

Plaintiff states that it has the exclusive and incontestable right to use the ABITA SPRINGS MARKS in connection with bottled water as evidenced by its federal trademark registrations.  If the right to use a mark has become incontestable, as Plaintiff contends, then the registration is conclusive evidence of the validity of the registered mark and its registration, of the registrant's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce.  15 U.S.C. 1115(b).

In opposition, Defendants challenge Plaintiff's Marks as invalid and unenforceable as being deceptive.  Defendants argue that Plaintiff's Marks are deceptive for three reasons: (1) its bottled water is not from the Town of Abita Springs, Louisiana; (2) its bottled water is not from the springs known as Abita Springs; and (3) its water is from a deep water (i.e. artesian) well and not from a spring.  According to Defendants, when Plaintiff first applied to register its ABITA SPRINGS Marks, different specimens of how the Marks were used were presented to the USPTO with the applications, but they all either stated that the water was from "a natural source in Abita Springs, Louisiana" or called the product "Abita Springs Water" and made no mention that the water did not come from the Town of Abita Springs or

6

from a natural spring.  Therefore, Defendants argue that Plaintiff's Marks are "primarily geographically deceptively misdescriptive."[6]  Such marks cannot be registered on the Principal Register.  15 U.S.C. 1052(e)(3).

In reply, Plaintiff states that its marks are incontestable and not subject to an invalidity challenge on grounds that the marks are primarily geographically deceptively misdescriptive. Incontestable trademarks are immunized against all defenses except those specifically set forth in 15 U.S.C. 1115(b). Deceptiveness and misdescriptiveness are not valid defenses to incontestable marks.  Specifically, the grounds set forth in 15 U.S.C. 1115(b) include:

> (1)  That the registration or the incontestable right to use the mark was obtained fraudulently; or
>
> (2)  That the mark has been abandoned by the registrant; or
>
> (3)  That the registered mark is being used by or with the permission of the registrant or a person in privity with the registrant, so as to misrepresent the source of the goods or services on or in connection with which

---

[6] Whether a mark is primarily geographically deceptively misdescriptive requires an analysis under a two prong test: (1) whether the primary significance of the mark as it is used is a generally known geographic place; and (2) whether the public would make a "goods/place association, i.e., believe that the goods for which the mark is sought to be registered originate in that place." Institut National des Appellations d'Origine v. Vintners Int'l Co., Inc., 958 F.2d 1574, 1580 (Fed. Cir. 1992). Defendants state that a number of Plaintiff's customers have stated that they purchased "Abita Springs" bottled water because they believed that Plaintiff's water came from fresh water springs in Abita Springs, Louisiana, and when they found out that it did not come from Abita Springs, Louisiana, or the springs in that town, they were "disappointed."

7

>the mark is used; or
>
>(4)   That the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, of the party's individual name in his own business, or of the individual name of anyone in privity with such party, or of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin; or
>
>(5)   That the mark whose use by a party is charged as an infringement was adopted without knowledge of the registrant's prior use and has been continuously used by such party or those in privity with him from a date prior to (A) the date of constructive use of the mark established pursuant to section 1057(c) of this title, (B) the registration of the mark under this chapter if the application for registration is filed before the effective date of the Trademark Law Revision Act of 1988, or (C) publication of the registered mark under subsection (c) of section 1062 of this title: *Provided, however,* That this defense or defect shall apply only for the area in which such continuous prior use is proved; or
>
>(6)   That the mark whose use is charged as an infringement was registered and used prior to the registration under this chapter or publication under subsection (c) of section 1062 of this title of the registered mark of the registrant, and not abandoned: *Provided, however,* That this defense or defect shall apply only for the area in which the mark was used prior to such registration or such publication of the registrant's mark; or
>
>(7)   That the mark has been or is being used to violate the antitrust laws of the United States; or
>
>(8)   That the mark is functional; or
>
>(9)   That equitable principles, including laches, estoppel, and acquiescence, are applicable.

It is Plaintiff's belief that none of these grounds apply in this instance.

Defendants, however, argue that because Plaintiff never informed the USPTO Examining Attorney that its Marks were

primarily geographically deceptively misdescriptive and therefore ineligible for registration, Plaintiff committed fraud or inequitable conduct, which falls under section (1) of the defenses to an incontestable mark set forth in 15 U.S.C. 1115(b). This conduct was then compounded when Plaintiff filed for incontestability status and again failed to disclose that its Abita Springs water did not actually come from the Town of Abita Springs.

Plaintiff responds that its conducts fails to rise to the level of fraud.  At the time Plaintiff's ABITA SPRINGS registrations were sought by the Abita Springs Water Co., Inc., ABITA SPRINGS brand water was pulled from the greater Abita Springs, Louisiana area, although the actual address of the well site was located just outside (approximately two miles from) the Abita Springs town limits.  Furthermore, a party claiming fraud must prove such fraud by clear and convincing evidence.  As set forth in Orient Express Trading Co. v. Federated Department Stores, this requires proof of: (1) a deliberate attempt by a trademark registrant to mislead the USPTO that is more than mere error or inadvertence, and (2) that knowing misstatements were made with respect to a material fact, one that would have affected the USPTO's action on the application.  842 F.2d 650, 653 (2d Cir. 1988).  According to Plaintiff, Defendants cannot meet this burden.  There is absolutely no evidence that Plaintiff deliberately withheld information in order to be granted registrations.  Even if it is technically incorrect that

Plaintiff's ABITA SPRINGS water was from a source in Abita Springs because the well-site was outside the town limits, this misrepresentation does not rise to the level of fraud.

This Court determines that Plaintiff has established it has a protectable mark that is not subject to any of the attacks asserted by Defendants.  This Court also determines that Plaintiff's conduct surrounding its registration of its Marks fails to rise to the level of fraud, particularly under a clear and convincing standard.

### 2. Whether Plaintiff is the Senior User of the Mark

The first party to use a mark is the senior user of the mark.  Union Nat. Bank of Texas, 909 F.2d at 842.  Plaintiff argues that it has been using the ABITA SPRINGS Marks in commerce in the United States since at least 1994.  Defendants only began using the PRINCESS ABITA Mark in commerce on October 10, 2006.  Therefore, Plaintiff has shown that it is the senior user.

### 3. Likelihood of Confusion between Trademarks

The test for determining likelihood of confusion in a trademark case involves evaluating a variety of factors including: (1) the type of trademark at issue (i.e. strength of the mark); (2) similarity of design; (3) similarity of products on which the marks are used; (4) identity of retail outlets and purchasers; (5) identity of advertising media utilized; (6) defendant's intent; (7) and actual confusion.  Marathon Mfg. Co. v. Enerlite Prod. Corp., 767 F.2d 214, 217 (5th Cir. 1985).  None of these factors by itself is dispositive.  Id. at 218.  In

Marathon Manufacturing Co., the Court noted that the evaluation of the Marks themselves is an important consideration, for "it is in their similarity that the root of most confusion lies."  767 F.2d at 218.

Based on an analysis of these factors, set forth below, this Court determines that Plaintiff has shown a likelihood of confusion between the two Marks.  Furthermore, when "likelihood of confusion" analysis is closely balanced, the question should be resolved in favor of the senior user, for purpose of deciding whether to a issue preliminary injunction in a trademark infringement suit.  Quantum Fitness Corp., 83 F. Supp. 2d 810.[7]

### a. Degree of Similarity of Design Between the Two Marks

For confusion to be present, "only substantial similarity rather than total similarity between the trademarks needs to exist."  Acme Refrigeration, 961 F. Supp. 936 at 940.  The similarity of appearance of marks is determined by a subjective "eyeball" test in which the overall impression created by the mark as a whole is considered, rather than simply considering individual features of the marks.  Exxon Corp. v. Texas Motor Exchange of Houston, Inc., 628 F.2d 500 (5th Cir. 1980); see also

---

[7] Plaintiff also argues that there is a substantial likelihood that it will prevail on the merits of its Louisiana state trademark infringement, unfair trade practices, and dilution claims.  The showing required is, in many cases, tantamount to, and is established by, showing a likelihood of confusion.  See Falcon Rice Mill v. Community Rice Mill, 725 F.2d 336, n6 (5 th Cir. 1984).

11

Acme Refrigeration, 961 F. Supp. 936 at 940 (stating that similarity of appearance is determined "on the total basis of the trademark rather than by a comparison of individual factors in the trademark").  The Court has had the opportunity to "eyeball" both Marks as used on labels of the competing gallon water jugs. See Plaintiff's Exh. 3A and 3B (plastic gallon water jugs submitted in conjunction with Plaintiff's Motion for a Temporary Restraining Order) and Defendant's Exh. 6 (photographs of DeWald with a bottle of Plaintiff's water).

Plaintiff's Mark incorporates the logo "ABITA SPRINGS" written in white letters on a blue and green background.[8] Defendants' Mark also incorporates the word "ABITA" written in white letters on a green background with an image of a princess. The word "ABITA" in Defendants' Mark is included in the phrase "PRINCESS ABITA NATURAL SPRING WATER."

When looking at the Marks side by side, there are notable similarities.  Defendants emphasize that their mark also contains the image of an Indian Princess kneeling by a spring, and is therefore different in sight, sound, and meaning.  According to Defendants, the Indian Princess is the focal point of Defendants' Mark.  However, the word "ABITA" is displayed in a font size significantly larger than the words "PRINCESS" or "NATURAL SPRING WATER," or the image of the Indian Princess, and "ABITA" catches

---

[8] For purposes of this analysis, the Marks affixed on one gallon water bottles submitted to the Court by Plaintiff will be used.

12

the eye before the princess is even noticed.  As a result, the presence of this princess does not defeat the high degree of similarity between the Marks.

Furthermore, "[w]here the products are closely related, less similarity in the trademarks is necessary to support a finding of infringement."  Id. at 219.  In this case, both Marks are used in logos on water bottles, i.e. the marks are displayed on identical products.

### b. Similarity Between the Two Products and Identity of Retailed Outlets and Purchasers

As just stated, both Marks are displayed on identical products.  Furthermore, Defendants' products are sold in the same stores at which Plaintiff's products are sold.[9]

### c. Defendants' Intent

Plaintiff states that Defendants consciously intended to trade upon Plaintiff's goodwill be using confusingly similar marks to identify identical goods in the same geographic areas through the same channels of distribution.

DeWald, on the other hand, states that he first became interested in bottling fresh water after both he and both of his daughters survived cancer and his research determined that pure water was one of the best ways to prevent cancer from reoccurring.  DeWald discovered that the spring at Abita Springs,

---

[9] In at least one store, Defendants' products are being sold on the same shelf, directly adjacent to Plaintiff's products.

Louisiana had not been used for many years. He read about the legend of the Princess Abita who had become ill and found a miraculous cure in the waters of a fresh water spring at the location of what later became known as Abita Springs. DeWald decided to form Princess Abita Water, L.L.C. He selected this name because he wanted it to reflect the story of Princess Abita finding the curative waters in order to convey that the water comes from the original springs in the Town of Abita Springs. He also wanted to avoid using the full name of the town as his primary trademark even though he would still list Abita Springs on the label as the authentic source for his water. DeWald felt the trademark was different enough from the name and label used by Plaintiff so as not to cause any confusion between the products.

This Court determines that the evidence is insufficient to show that Defendants intended to take advantage of Plaintiff's goodwill associated with the ABITA SPRINGS Mark. However, Defendants were sent a cease and desist letter making them aware of the existence of Plaintiff's trademarks. Despite this actual knowledge of potentially infringing activity, Defendants proceeded with the use of the mark.

### d. Actual Confusion

Evidence of actual confusion is not necessary to finding of likelihood of confusion, for purpose of determining whether trademark has been infringed, but it is nevertheless best evidence of likelihood of confusion. 15 U.S.C.A. 1114(1),

1125(a)(1)(A); see also <u>Quantum Fitness Corp. v. Quantum LifeStyle Centers, L.L.C.</u>, 83 F. Supp. 2d 810 (S.D. Tex. 1999).

     Plaintiff has submitted no evidence of actual confusion. However, considering the striking similarity of the marks, the identical goods which they identify, and the identical channels in which they are sold, it is very likely that consumers will confuse the two products, or believe they are somehow affiliated or derive from the same source.

**B.   Substantial Threat of Irreparable Harm**

     The second factor to be considered in determining whether a preliminary injunction should issue is the substantial threat of irreparable harm to the plaintiff. In cases where monetary compensation cannot remedy the plaintiff's injury, the Fifth Circuit has found the injury irreparable. <u>Spiegel v. City of Houston</u>, 636 F.2d 997, 1001 (5th Cir. 1981).

     In trademark and trade dress cases specifically, if one trademark user cannot control the quality of the other trademark users's goods and services, he can suffer irreparable harm. This type of irreparable harm can be measured by the loss of goodwill and damage to reputation, both of which can be traced to loss of control over the alleged trademark infringer's products. This loss of control constitutes immediate irreparable harm. <u>Acme Refrigeration</u>, 961 F. Supp. at 938-39. See also <u>Quantum Fitness Corp.</u>, 83 F. Supp. 810 ("When likelihood of confusion exists, trademark infringement plaintiff's lack of control over quality of defendant's goods or services constitutes immediate and

15

irreparable injury, for purpose of obtaining preliminary injunction, regardless of actual quality of those goods or services.").

Plaintiff argues that the numerous similarities between its Mark and that of Defendants create an imminent risk that the consuming public will falsely associate Defendants' products with Plaintiff's or mistakenly will purchase Defendants' product instead of Plaintiff's, assuming they are one in the same. According to Plaintiff, this will lead to a loss in not only initial sales for Plaintiff, but also in "follow on" sales which Plaintiff normally expects to receive. Regardless, proof of these damages will be difficult to calculate.

In opposition, Defendants state that Plaintiff has provided no evidence of actual confusion or that Plaintiff will lose "follow on" sales.

This Court determines that Plaintiff has met its burden of proving a substantial threat of irreparable harm. It is true that Plaintiff has only been building up goodwill for nearly fourteen years, which is not that long compared to other cases. Cf. Acme Refrigeration, 961 F. Supp. 936 (finding irreparable harm when Plaintiff had been operating for fifty years). On the other hand, Defendants have been operating for only a comparatively short period of time and have only recently begun using the trademark "PRINCESS ABITA NATURAL SPRING WATER."

**C.   Balance of Hardships**

The third factor requires the plaintiff to establish that

his irreparable harm is greater than the hardship that the preliminary injunction would cause the defendant.  <u>Valley</u>, 118 F.3d at 1051.

Plaintiff states that it has made a substantial investment in its protected trademarks, which have been in use since at least 1994 and will lead to the irreparable harm set forth above. On the other hand, if the injunctive relief is granted, Defendants will only be enjoined from further manufacture and sale of products identified by the PRINCESS ABITA Marks.  The injunction will not prevent Defendants from selling their products or otherwise conducting their business under non-infringing marks.  Furthermore, because Defendants only recently entered the market, any potential harm they may experience would be minimal, particularly when compared to the harm Plaintiff will suffer if the injunction is denied.

In opposition, Defendants states that their company has invested more than $1 million in its bottling operation and would suffer if the injunction was granted.

This Court determines that Plaintiff has satisfied its burden of proving that its irreparable harm is greater than the hardship that the preliminary injunction would cause Defendants.[10]  Even if the preliminary injunction is granted,

---

[10] The testimony at the preliminary injunction hearing revealed that Defendants have not commenced any substantial advertising for their bottled water.  It should not be expensive for Defendants to simply redesign their label so it no longer infringes upon Plaintiff's Marks.

Defendants could still continue to bottle and sell water under a trademark not likely to result in customer confusion.

**D.  Adverse Effect on the Public Interest**

A fourth criteria is that the injunction will not disserve the public interest.  <u>Valley</u>, 118 F.3d at 1051.  In trademark infringement cases, this factor involves balancing the public's interest in competition and in protecting intellectual property rights.  <u>Allied Marketing Group, Inc. v. CDL Marketing, Inc.</u>, 878 F.2d 806, n.1 (5th Cir. 1989).

According to Plaintiff, the consuming public has an interest in protecting the integrity of trademarks, because they secure for the owner the benefits of good reputation.  See <u>Park 'N Fly, Inc.</u>, 469 U.S. at 198.  Therefore, the public interest weighs in favor of granting a preliminary injunction.

In opposition, Defendants argue that given the likelihood of confusion between the Marks in question and Plaintiff's deception in mischaracterizing where its bottled water products come from, Plaintiff has failed to satisfy its burden of proving that an injunction would serve the public interest.

This Court determines that Plaintiff has satisfied its burden.  Furthermore, the granting of a preliminary injunction would ensure compliance with both state and federal laws.  See <u>Acme Refrigeration</u>, 961 F. Supp. at 941.  Any time that a state or federal law is enforced, the public interest is served.  <u>Id.</u>  Therefore, granting Plaintiff's motion for a preliminary injunction would not have an adverse effect on the public

interest.  Accordingly,

**IT IS ORDERED** that Plaintiff's **Motion for Preliminary Injunction (Rec. Doc. 5)** is hereby **GRANTED.**

New Orleans, Louisiana, this 13th day of February, 2008.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE