UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DS WATERS OF AMERICA, INC.                CIVIL ACTION

VERSUS                                    NO: 07-9156

PRINCESS ABITA WATER,                     SECTION: J(2)
L.L.C., ET AL

**ORDER AND REASONS**

Before the Court is Defendant Princess Abita Water, L.L.C.'s ("PAW") and Jack Dewald's **Motion to Enforce Settlement (Rec. Doc. 53).** The Court heard oral argument on the motion on March 18, 2009, and ordered supplemental briefing after taking the motion under advisement. See Rec. Doc. 60. After review of the record, the memoranda of counsel, the parties statements at oral argument, and the applicable law, the Court finds as follows.

**PROCEDURAL HISTORY AND BACKGROUND FACTS**

DS Waters of America, LLC ("DS"), a bottler, distributer, and seller of bottled water products and water coolers, owns federal and state[1] trademark applications for the ABITA SPRINGS trademark, both the words "Abita Springs" alone and the words "Abita Springs" in a design format (collectively referred to as "ABITA SPRINGS Marks"). DS also owns federal trademark

---

[1] Specifically, DS owns state registrations for ABITA SPRINGS LOGO: LETTER STACKED "I" REPRESENTED BY IDEALIZED WATER STREAM to identify bottled water, and for ABITA SPRINGS for use in connection with the manufacture, sale, and delivery of bottled water.

registrations for ABITA SPRINGS for use in commerce in connection with water coolers and bottled water delivery services.

DeWald and PAW (collectively "Defendants") filed an intent-to-use federal trademark application for the PRINCESS ABITA NATURAL SPRING WATER SOURCE: ABITA SPRINGS trademark in the design format in connection with bottled water. This application is still pending before the USPTO as it was abandoned following multiple requests for extensions of time within which to allege use of the PRINCESS ABITA Mark in commerce.[2]

When DS became aware of Defendants' intent to use the PRINCESS ABITA Marks, DS sent DeWald a cease and desist letter notifying DeWald of DS's trademark rights and requested that he and PAW cease and desist their use of "Princess Abita" or any other confusingly similar variation thereof. Defendants nonetheless continued to use the Marks.

As a result, DS filed its verified complaint against Defendants on November 26, 2007, alleging trademark infringement pursuant to the Lanham Act, 15 U.S.C. 1114, and unfair competition pursuant to 15 U.S.C. 1125, as well as trademark

---

[2] In January 2007, DeWald filed a petition to revive the application indicating there was ongoing effort to begin use of the PRINCESS ABITA NATURAL SPRING WATER SOURCE: ABITA SPRINGS trademark in commerce. DeWald submitted a statement and specimen of use to the USPTO claiming use as early as June 1, 2002 and a date of first use in commerce of October 10, 2006. However, on August 28, 2007, the USPTO refused to accept DeWald's statement of use and specimen of use.

infringement, dilution, and unfair trade practices pursuant to Louisiana law arising from Defendants' use of the PRINCESS ABITA Mark.  Contemporaneously therewith, DS filed a Motion for Temporary Restraining Order, which this Court denied (Rec. Doc. 3).  Thereafter, Defendants filed an answer and counterclaim against DS under the Lanham Act and unfair trade practices under Louisiana law.

Next, DS filed a motion for preliminary injunction which the Court granted on February 13, 2008 restraining Defendants from using the PRINCESS ABITA NATURAL SPRING WATER SOURCE: ABITA SPRINGS & PRINCESS ABITA NATURAL SPRING WATER trademarks (Rec. Doc. 22).

The matter was eventually settled at a conference with the Magistrate Judge on August 5, 2008 (Rec. Doc. 42), and a standard sixty day order of dismissal was entered by this Court.  After reaching the agreement at the settlement conference, the parties agreed to reduce their settlement to a written document drafted by DS.  However, the parties could not agree on written terms.  A telephone conference was held with the Magistrate Judge, and the parties were allegedly informed that any restrictions not reached in the original settlement conference were not part of the agreement and should not be included in the written document.

After several extensions of the sixty day order, Defendants filed the present motion to enforce the settlement agreement

reached in the August 5, 2008 settlement conference.  The Court heard oral argument on the motion on March 18, 2009, and deferred ruling pending further briefing by the parties on the issue of Defendants' use of the Princess Legend.  Likewise, the Court ordered the parties to continue negotiating towards a joint written settlement agreement.

The parties filed their supplemental briefing on March 30, 2009.  The parties indicate that they have reached agreement as to the written settlement terms on all but one issue, namely Defendants' use of the Princess Legend on its labels and marketing materials.  The parties agree to joint written settlement terms except for two provisions regarding the use of the Princess Legend.  Thus, each party seeks an order of the Court adopting the joint written settlement agreement with its own version of the paragraphs regarding the Princess Legend.

## THE PARTIES' ARGUMENTS

As an initial matter, DS argues that the Court ruled at the hearing on this matter that Defendants cannot use the Princess Legend on their product *labels*.  Specifically, DS notes that the Court stated that the Princess Legend as it appeared in the attachments to the briefing at oral argument "does violate the spirit and letter of the settlement agreement" insofar as the use of the legend directly or indirectly indicates that Defendants'

4

water is "true Abita Spring water." See Transcript of March 18, 2009 Hearing, Rec. Doc. 60 at p. 17. As a result of this statement by the Court, DS argues that Defendants can only challenge this finding by a motion for new trial, and cannot simply rely on a post-hearing brief to counter the Court's prior ruling.

Likewise, DS argues that Defendants cannot use the Princess Legend on their *marketing materials* for the same reasons. DS cites the transcript of a documentary broadcast by Louisiana Public Broadcasting, which details the history of the legend that Defendants propose to use. The substance of this documentary, according to DS, shows that the only reason for using the Princess Legend on Defendants' labels and marketing materials would be to suggest that Defendants' water is the true Abita Spring water. As such, DS proposes that the written settlement agreement confected by the parties should also include the prohibition that "at no time shall the 'Legend of the Princess' appear on any of [Defendants'] product labels" or marketing materials. See DS's Proposed Settlement Agreement, Rec. Doc. 63-2, p. 3, ¶¶ 4.b & 5.b.

In reply, Defendants reiterate as they did at the oral argument hearing that the issue of the Princess Legend *was never addressed directly by DS* during the negotiations with the Magistrate Judge that eventually led to the settlement of this

5

case. Defendants have attached an exhibit that constitutes the list[3] of settlement demands that the Magistrate Judge discussed with Defendants during the settlement negotiations. The only two demands that were not struck during negotiations involve the issue of whether and how Defendants could market and/or sell their product as the "true Abita Springs water." Defendants note that the hand-written modifications on this list include the striking out of a prohibition that would prohibit Defendants from suggesting or implying that their water "comes from the Abita *aquifer*." Rec. Doc. 64-2 (emphasis added). In lieu of that language, the Magistrate Judge substituted a prohibition precluding Defendants from implying that their water is "true Abita Springs water" and/or that DS's water is "not true Abita Springs water." ("Magistrate's Modifications"). Id. In addition to these modifications, Defendants argue, with the support of an affidavit executed by DeWald, that Defendants' use of the Princess Legend *was specifically discussed by the Magistrate Judge with Defendants* during the ex parte portion of the settlement process.[4] See Rec. Doc. 64-3, p.2. Finally,

---

[3] Defendants note that it is unclear whether this list was generated by the Magistrate Judge or by DS, but that the most likely scenario is that DS drafted this list of demands.

[4] Counsel for Defendants likewise states in his capacity as an officer of the court that his memory coincides with that of DeWald with respect to the Magistrate Judge's discussion of the legend.

6

Defendants include a proposed copy of the marketing materials that will utilize the Princess Legend. Defendants note that these materials clearly indicate that the source of their water is not the "true Abita Spring," which was closed by the state of Louisiana in 1960, but rather an aquifer near the spring in the town of Abita Springs. Based on all these circumstances, Defendants argue that their use of the Princess Legend, as modified in the marketing materials attached to their supplemental memorandum, does not violate the spirit and letter of the settlement. As such, Defendants propose that the settlement agreement include provisions allowing Defendants to use the Princess Legend on their labels and marketing materials, as long as the legend does not imply that Defendants' water is "true Abita Spring water."

## **DISCUSSION**

As an initial matter, the Court adheres to its statement at oral argument that the inclusion of the Princess Legend on Defendants' 16.9 oz. bottles *as it appears in the initial briefing for this motion* would violate the spirit and letter of the settlement agreement in that it would indirectly or directly imply that Defendants' water was the "true Abita Spring water."

However, in light of the supplemental briefing, the Court does not agree that the two paragraphs proposed by DS, which

7

categorically prohibit *any use* of the Princess Legend on Defendants' labels and marketing materials, properly embody the terms of the August 5, 2008 settlement. First, it is possible that Defendants may be able to utilize the Princess Legend in some form that does *not* imply that their water is the "true Abita Spring water" or that DS's water is *not* "true Abita Spring water." In fact, the proposed marketing materials attached to Defendants' supplemental brief do just that by *clearly stating* that the true Abita Spring was actually closed by the State of Louisiana in 1960. This suggests that Defendants' water is *not* the "true Abita Spring water," which comports with the terms of the settlement agreement as it was entered by the parties during the conference with the Magistrate Judge. As such, because Defendants may be able to utilize the Princess Legend in some way on their labels without violating the settlement terms, the blanket prohibition on its use suggested by DS is inappropriate as it was not contemplated by the parties. As noted by counsel for Defendants at oral argument, the settlement agreement cannot reasonably be construed as a perpetual pre-approval requirement for every labeling change that Defendants may decide to make.

In addition, the Court finds that the provisions proposed by Defendants regarding the use of the Princess Legend *should* be included in the settlement agreement. Specifically, Defendants suggest the following paragraphs at 4.b and 5.b:

8

> 4.b. Defendants may use the legend of the Princess on their labels subject to restrictions contained within this agreement.
>
> 5.b. Defendants may use the legend of the Princess in their marketing material subject to the following restrictions and further subject to other restrictions contained within this agreement.
>
>> Princess Abita cannot market or otherwise attempt to sell its product by making any reference to it coming from the "true Abita Spring" or make any direct or indirect implication that its water is the "true Abita Spring water". Princess Abita cannot make any comments implying, directly or indirectly, that DS Water's ABITA SPRINGS water is not "true Abita Springs" water.

The addition of these provisions will adequately reflect the substance of the agreement reached by the parties before the Magistrate Judge because they track the specific language of the Magistrate's Modification, which only prohibits implications that Defendants' water is from the *true Abita Spring*, but does *not* prohibit references to the *Abita Springs aquifer*.

As noted earlier, the Court stands by its statement at oral argument that the Princess Legend, as it appeared on the 16.9 oz. label attached to Defendants' initial briefing, violated the terms of the settlement agreement. However, the Court finds it inappropriate to make a decision at this time as to whether the *marketing materials* proposed by Defendants actually do or do not violate the terms of the settlement as agreed to by the parties with the Magistrate Judge. Furthermore, the Court concludes that the settlement agreement confected by the Magistrate Judge *does*

9

*not require* a provision prohibiting the Defendants from using the Princess Legend in any way whatsoever on their *labels*. The only issue before the Court at this time is the proper written terms of the oral settlement entered by the parties. Whether and to what extent the Defendants' ultimate use of some version of the Princess Legend in its labels and marketing materials may violate the terms of that settlement is an entirely separate question that is neither ripe for decision nor actually in controversy. The parties did not directly address the use of the Princess Legend in their settlement, and thus the only reasonable provisions regarding its use that can be included in the written settlement terms are the ones proposed by the Defendants, i.e. that Defendants are free to use the legend in any way that does not violate the other terms of the settlement. If and when Defendants use the Princess Legend in a label or any marketing materials in a way that violates the settlement agreement *as entered and contemplated by the parties*, DS may then have grounds to seek enforcement of the settlement terms and/or file another law suit challenging that use. In the meantime, the parties are relegated to the terms of the settlement that they have agreed to during the course of this litigation. As such, the Court adopts the written terms agreed to by the parties, with the additions of paragraphs 4.B and 5.B as proposed by Defendants. Accordingly,

**IT IS ORDERED** that Defendants' **Motion to Enforce Settlement (Rec. Doc. 53)** is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that the parties shall execute the *Settlement Agreement and Authentic Act of Release of All Claims*, attached as Exhibit 1 to Defendants' Brief on Use of Legend, Rec. Doc. 64-1, with the following language included at paragraphs 4.b and 5.b:

> 4.b. Defendants may use the legend of the Princess on their labels subject to restrictions contained within this agreement.
>
> 5.b. Defendants may use the legend of the Princess in their marketing material subject to the following restrictions and further subject to other restrictions contained within this agreement.
>
> Princess Abita cannot market or otherwise attempt to sell its product by making any reference to it coming from the "true Abita Spring" or make any direct or indirect implication that its water is the "true Abita Spring water". Princess Abita cannot make any comments implying, directly or indirectly, that DS Water's ABITA SPRINGS water is not "true Abita Springs" water.

New Orleans, Louisiana, this 12th day of May, 2009.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE